## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **ESTATE OF JORDAN BAKER, by** | § | |
| **and through administrator, JANET BAKER,** | § | |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | **C. A. NO.: 4:15-cv-3495** |
| | § | |
| **JUVENTINO CASTRO, THE CITY OF** | § | |
| **HOUSTON, RPI MANAGEMENT CO.,** | § | |
| **LLC and RPI INTERESTS I, LTD.,** | § | |
| | § | |
| *Defendants* | § | |

**DEFENDANTS JUVENTINO CASTRO AND THE CITY OF HOUSTON'S MOTION TO
EXCLUDE OR LIMIT THE TESTIMONY OF
<u>PLAINTIFF'S EXPERT BRIAN T. WEAVER, P.E.</u>**

## TABLE OF CONTENTS

I.  NATURE AND STAGE OF THE PROCEEDINGS ....................................................1

II.  ISSUES TO BE RULED UPON BY THE COURT AND STANDARD OF REVIEW
....................................................................................................................................1

III.  SUMMARY OF THE ARGUMENT .........................................................................2

IV.  REPORT AND DEPOSITION OF BRIAN T. WEAVER, P.E. .................................3

V.  ARGUMENT AND AUTHORITIES .........................................................................3

   A.  Mr. Weaver is not qualified to provide expert opinion testimony and thus, his
   proffered testimony is not reliable. .........................................................................6

      1.  Weaver's expertise is in machine design, not the subject matters on which he
      opines .......................................................................................................6

      2.  Weaver is not qualified and lacks experience in shooting cases ......................7

      3.  Weaver is not qualified and lacks experience in puncture v. penetration bullet
      wounds .....................................................................................................7

      4.  Weaver is not qualified and lacks experience in blood spatter, trajectory, and
      ejection patterns ........................................................................................8

      5.  Mr. Weaver's graduate studies/peer review articles will not assist the jury......9

   B.  Mr. Weaver's opinions are speculative, are not supported by sufficient data, and
   will not assist the jury .........................................................................................10

      1.  Mr. Weaver's opinions are mere speculation ..................................................10

      2.  Mr. Weaver did not base his opinions on sufficient facts...............................13

      3.  Mr. Weaver's methodology is not generally accepted in the scientific
      community .................................................................................................14

      4.  Mr. Weaver is not qualified to opine on trajectory or ejection patterns, and relied
      solely on articles to support his report ...........................................................16

      5.  Mr. Weaver's field of expertise is not the subject matter of this lawsuit ...... 16

VI.  CONCLUSION....................................................................................................18

## <u>TABLE OF CITATIONS</u>

**Cases**                                                                           **Page(s)**

*Berry v. City of Detroit,* 25 F.3d 1342 (6th Cir. 1994) .................................................... 5

*Boyd v. State Farm Ins. Cos.,* 158 F.3d 326 (5th Cir. 1998) ........................................ 6

*Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577 (5ᵗʰ Cir. 2004) ...................................... 5

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ........................................... 1, 2, 5, 15

*Gen. Elec. Co. v. Joiner,* 522 U.S. 136 (1997) ................................................. 5

*Hathaway v. Bazany,* 507 F.3d 312 (5ᵗʰ Cir. 2007) .................................................... 2, 6

*Huss v. Gayden,* 571 F.3d 442 (5th Cir. 2009) ........................................................ 3

*In Re: Aircraft Disaster at New Orleans, Louisiana,* 795 F.2d 1230 (5th Cir. 1986) ................... 6

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999) .......................................... passim

*Mathis v. Exxon Corp.,* 302 F.3d 448 (5th Cir. 2002) ................................................... 3

*Moore v. Ashland Chem., Inc.,* 151 F.3d 269 (5th Cir. 1998) ......................................... 3

*Owen v. Kerr-McGee Corp.,* 698 F.2d 236 (5th Cir. 1983) ........................................... 4

*Pipitone v. Biomatrix,* 288 F.3d 239 (5th Cir. 2002) .................................................. 5, 15

*Salas v. Carpenter,* 980 F.2d 299 (5th Cir. 1992)......................................................... 6

*United States v. Hicks,* 389 F.3d 514 (5th Cir. 2004) .................................................... 3

iii

## <u>STATUTES</u>

42 U.S.C. § 1983 .................................................................................................................... 1

Federal Rule of Evidence 104(a) ........................................................................................... 3

Federal Rule of Evidence 702 ....................................................................................... *passim*

Federal Rule of Evidence 704 ................................................................................................ 4

Defendants the City of Houston ("Houston" or the "City") and Officer Juventino Castro ("Officer Castro") file this motion to exclude, or alternatively limit, the testimony of Brian Weaver, P.E.  Defendants would respectfully show the Court that Mr. Weaver's opinions and conclusions are outside his scope of expertise, not the result of reliable principles or methods, and fail to assist the trier of fact.  Accordingly, Mr. Weaver's opinions are not admissible, and they should be excluded under Rule 702 of the Federal Rules of Evidence.

## I.       STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

This case involves claims of violations of civil and constitutional rights stemming from the death of Jordan Baker ("Decedent") on or about January 16, 2014.  [Doc. #44].  Specifically, Plaintiff Estate of Jordan Baker by and through administrator Janet Baker ("Plaintiff") has alleged that Decedent's civil rights under the Fourth and Fourteenth Amendments to the U.S. Constitution as well as 42 U.S.C. §1983 were violated by City Defendants when Defendant Juventino Castro ("Castro") shot the Decedent on or about January 16, 2014, in the City of Houston, Harris County, Texas. [*Id*.] Plaintiff also alleges that it is entitled to damages for wrongful death and survival action claims under 42 U.S.C. §1983. [*Id*.]  City Defendants have timely answered, denied all allegations and stated that they are entitled to sovereign, official and qualified immunity. [Doc.#49].

Discovery in this matter has concluded.  The deadline to file all motions is March 2, 2018. The parties mediated the case with Magistrate Judge Dena Palermo on December 6, 2017 and the case did not settle with regard to the claims against City Defendants.

## II.      STATEMENT OF ISSUES AND STANDARD OF REVIEW

1.  Should the testimony of Plaintiff's expert Brian T. Weaver, P.E. be excluded under
    the standards set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588
    (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)?

**Standard of review**:    In their *Daubert* gate-keeping role with respect to receipt of expert engineering testimony, trial courts may consider one or more of the specific Daubert factors and the gatekeeping inquiry must be tied to the particular facts. *Kumho Tire Co*, 526 U.S. at 138, citing *Daubert*, 509 U.S. at 591.  The court is to make a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.  Further, the Court must decide whether Mr. Weaver could reasonably determine where Baker and Castro were located at the time of the weapon discharge, how Baker was positioned at the time of the bullet penetration and what was Baker's intended travel at the time he was shot.  A reviewing court will review the trial court's determination under an abuse of discretion standard.  *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999); *Hathaway v. Bazany*, 507 F.3d 312, 317-19 (5th Cir. 2007).

## III.    SUMMARY OF THE ARGUMENT

Mr. Weaver's opinion testimony of is inadmissible under the standards set forth by the United States Supreme Court, the Fifth Circuit Court of Appeals and the Federal Rules of Evidence.  His opinion testimony should be excluded because he opines on matters outside the scope of his expertise. Mr. Weaver's opinions also are not supported by reliable principles or theories, are at best speculative and such will not assist the trier of fact. Mr. Weaver should be precluded from testifying at trial because his proposed opinion testimony does not satisfy the requirements of Rule 702 of the Federal Rules of Evidence, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny.

### IV.    REPORT AND DEPOSITION OF BRIAN T. WEAVER, P.E.

Exhibit A:          Expert Report of Brian T. Weaver, P.E. dated October 16, 2017

Exhibit B:          Deposition of Brian T. Weaver, P.E.

### V.    ARGUMENT AND AUTHORITIES

Mr. Weaver is not a scene reconstruction expert in police weapon discharges.  He is not qualified to provide opinion testimony that will help the jury understand the physical evidence or determine any material fact in issue in this case. Plaintiff, as the proponent of Mr. Weaver's opinion testimony, has the burden of showing that MR. Weaver's testimony is admissible under Federal Rule of Evidence 702. *See United States v. Hicks,* 389 F.3d 514, 525 (5th Cir. 2004) *and Moore v. Ashland Chem., Inc.,* 151 F.3d 269, 276 (5th Cir. 1998) (en banc) (citations omitted). Expert testimony is only admissible if it satisfies the strictures of Federal Rules of Evidence 104(a) and 702. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999).  Mr. Weaver's purported expert testimony falls well outside his area of expertise. For that reason, the Court's gate-keeping role requires that it be excluded.

The Court must address several preliminary questions relating to Mr. Weaver's qualifications, as well as the admissibility of his proposed testimony, before permitting him to offer opinion testimony into evidence in this case, either at the summary judgment stage or at trial. *See Huss v. Gayden,* 571 F.3d 442, 452 (5th Cir. 2009) and *Mathis v. Exxon Corp.,* 302 F.3d 448, 459-60 (5th Cir. 2002). Because Mr. Weaver utilized no ascertainable scientific calculation or technique, the initial question before this Court is whether the Plaintiff has established that Mr.

Weaver is both *qualified* to provide technical or other specialized knowledge and, if so, whether Mr. Weaver's opinion testimony *will assist the jury* to understand the *relevant* evidence or to determine a *material* fact in issue.  *Id.*

Mr. Weaver opines where Baker and Castro were located at the time of the weapon discharge, yet he admits he doesn't really know where either one of them were located but positioned Baker next to where he thought the first blood drop was located in the alley which had not been documented by CSU.  Those admissions show that his opinion would not be helpful to the jury, and it should be excluded.

Mr. Weaver opines how Baker was positioned at the time of the bullet penetration.  Mr. Weaver has positioned Baker in an absurd manner as if he is squatting on a low toilet with his chest turned to the right and his arms out.  Mr. Weaver admitted he could not determine how Baker was actually positioned when he was shot.  Therefore, Mr. Weaver's testimony is not helpful to the jury and should not be admitted.

Although Federal Rule of Evidence 704 allows that opinion testimony is not objectionable solely because it embraces an ultimate issue to be decided by the fact finder, "Rule 704 . . . does not open the door to all opinions."  *Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir. 1983).  Mr. Weaver's opinions and conclusions are not the product of reliable, verifiable, principles and methods. *See Kumho Tire, supra.* Trial courts are deemed to be "gate-keepers," whereby they are required to make preliminary assessments of whether the reasoning or methodology underlying the testimony is scientifically *valid* and whether the reasoning or methodology *can be properly*

4

*applied* to the disputed factual issues. *Pipitone v. Biomatrix,* 288 F.3d 239, 243-44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-93 (1993) (emphasis added)).

Mr. Weaver also opines on what was Baker's intended travel at the time he was shot. He states that based on the position of Baker's torso, he was likely turning away at the time of the bullet penetration. While Mr. Weaver may or may not be qualified to an opinion, he has not been forthcoming with the process and analysis by which he came to the conclusion.

Expert testimony must be both relevant *and reliable* to be admissible. *Id.* The Court's duty "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152. Importantly, if, as here, there is "too great an analytical gap between the data and the opinion proffered" an expert's testimony is unreliable. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Evidentiary problems with potential expert testimony are magnified when a court must deal with the elusive concept of non-scientific testimony, such as recreating the scene of a shooting with limited evidence. *See Berry v. City of Detroit,* 25 F.3d 1342, 1349 (6th Cir. 1994).

Mr. Weaver's opinion on what Baker was doing at the time he was shot is the very essence of speculative, inadmissible *ipse dixit* testimony. *Cf., Burleson v. Tex. Dep't of Criminal Justice,* 393 F.3d 577, 587 (5th Cir. 2004).

When an individual, as Mr. Weaver does here, acts as nothing more than a conduit for an interested party's advocacy position, that purchased opinion is of no benefit to the jury and is unquestionably inadmissible. *See In Re: Aircraft Disaster at New Orleans, Louisiana,* 795 F.2d

1230, 1233 (5th Cir. 1986). "[S]tated more directly, the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Id.; see also Salas v. Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992).

Where, as here, the record shows Mr. Weaver failed to apply the record evidence to *any appropriate standard* in a manner to reach a reliable, scientific, result because he utilized no accepted methodology to reach his opinions. "It is a well-established rule that without more than his credentials and a subjective opinion, as expert's testimony that a . . . condition simply 'is so' is not admissible." *See Boyd v. State Farm Ins. Cos.,* 158 F.3d 326, 331 (5th Cir. 1998). A court should, instead, exclude expert testimony when, as Mr. Weaver admits here, the "expert" bases his testimony, not upon any discernable training in, or use of, scientific methodology that was suited to the expertise offered, but on a plethora of unsupported assumptions, for which no factual support has been offered. *See Hathaway,* 507 F.3d at 318-19.

## A.   Mr. Weaver is not qualified to provide expert opinion testimony and thus, his proffered testimony is not reliable

1.   Weaver's expertise is in machine design, not the subject matters on which he opines.

Mr. Weaver is a mechanical engineer and uses the P.E. after his name, indicating he is a Professional Engineer, an advanced status as an engineer.   Mr. Weaver has licensure as a professional engineer in other states as it relates to machine design in mechanical engineering. [Ex. B, pgs. 156, lines 15-21; 157, lines 2-7, 13-15; pg. 157, line 16 through pg. 158, line 5).   Machine design is not an issue in this case.   Mr. Weaver admitted that there is no licensure for biomechanics or human factors because human factors is not engineering. [Ex. B, pg.158, line 6 through pg 159, line 1].

2. <u>Weaver is not qualified and lacks experience in shooting cases</u>.

When questioned about his work in other shooting cases, Mr. Weaver testified that he has worked on only one case involving a weapon discharge. [Ex. B, pg.135, lines 6 through pg. 136, line 1]. The case involved an officer who had placed his hand on the open window door of a vehicle, and the driver allegedly held the officer's hand on the door and drove, dragging the officer alongside the car. [Ex. B, pg. 136, line 7 through pg. 137, line 19]. Mr. Weaver was called on to determine if the driver could physically able to hold the officer's hand on the car door – he did not opine about bullet trajectories in that case. Other than the above fact scenario, Mr. Weaver has not handled a lawsuit where a bullet went through a person's body. [Ex. B, pg. 144, line 18 through pg. 145, line 2].

Mr. Weaver testified that he had experience in providing expert opinions for investigations into product failures and in blunt force trauma injuries from railroad accidents, automobile accidents, workers compensation accidents and falls – not injuries from gunshots. [Ex. B., pg. 12, lines 13-15; pg. 13, line 20 through pg. 14, line 2]. Mr. Weaver's website for his company, Explico, indicates that his firm has experience in biomechanics and accident reconstruction in vehicle accidents, pedestrian accidents, work place accidents and aviation accidents. [Ex. B, pg. 143, line 24 through pg. 144, line 3]. The Explico website references product failure experience as far as design, field testing and retrofitting designs of products. [Ex. B, pg. 144, lines 5-8]. Mr. Weaver does not have experience to provide an expert opinion in this case.

3. <u>Weaver is not qualified and lacks experience in puncture v. penetration bullet wounds.</u>

Mr. Weaver admits he has never participated in research analysis of human beings and their movement prior to and following missile projectile puncture or penetration wound. [Ex. B,

pg. 180, lines 17-21]. When questioned, Mr. Weaver did not know the difference or the proper definitions of puncture and penetration wounds as it relates to a missile projectile. [Ex. B, pg. 180, lines 17-21; pg. 180, line 24 through pg. 181, line 21]. Mr. Weaver does not have experience to provide an expert opinion in this case.

4. <u>Weaver is not qualified and lacks experience in blood spatter, trajectory, and ejection patterns.</u>

Weaver has not participated in research and analysis of blood spatter from human beings at points of missile projectile puncture or penetration wound. [Ex. B, pg. 182, lines 14-18]. Weaver has not participated in research and analysis of blood spatter the different parts of a human being at points of missile projectile puncture or penetration wound. [Ex. B, pg. 182, lines 19-23].

Mr. Weaver has no opinion on whether blood would have immediately exited his body from the entry wound. [Ex. B, pg. 201, lines 3-6]. Mr. Weaver admits he does not know when the blood would come out of Mr. Baker and Mr. Baker could have still been moving. [Ex. B, pg. 211, lines 5-14]. Mr. Weaver has not participated in research and analysis of blood spatter from the different parts of a human being at points of missile projectile puncture or penetration wound. [Ex. B, pg. 182, lines 19-23].

Before this case, Mr. Weaver had not been asked to determine a bullet trajectory. [Ex. B, pg. 145, lines 3-7]. Mr. Weaver has never participated in research associated with bullet trajectories. [Ex. B, pg. 183, lines 6-9]. Mr. Weaver has not participated in research and analysis of fired cartridge case ejection patterns. [Ex. B, pg. 183, lines 10-12]. Mr. Weaver never worked for a police department or served as an expert in bullet trajectory. [Ex. B, pg. 184, lines 6-8]. Mr.

Weaver never worked for officers and served as an expert in bullet trajectory expert. [Ex. B, pg. 184, lines 13-18].

In his report, Mr. Weaver referred to a 2011 L.R. Folios article entitled Blast and Ballistic Trajectories in Combat Casualties, which he did not read until after he was retained in this civil action. [Ex. A; Ex. B, pg. 185, line 12 through pg. 186, line 5]. This article dealt with high powered sniper rifles as well as other weapons. Mr. Weaver never participated in research or analysis of the differences between bullet trajectories from high-powered rifles versus handguns. [Ex. B, pg. 184, line 19 through pg. 185, line 3]. Mr. Weaver never participated in research or analysis of the differences between different caliber handguns. [Ex. B, pg. 185, lines 4-7]. Even so, Mr. Weaver stated that he was willing to analyze bullet trajectory. [Ex. B, pg. 183, line 23 through pg. 184, line 4].

Mr. Weaver has never tested ejection patterns. [Ex. B, pg. 120, lines 11-14]. Mr. Weaver has never fired a .40 caliber Glock. [Ex. B, pg. 118, lines 11-12]. While Mr. Weaver has fired his family's weapons, he does not own a weapon himself. Mr. Weaver has not participated in research and analysis of fired cartridge case ejection patterns. [Ex. B, pg. 183, lines 10-12]. In preparing his report, he referred to only one ejection pattern article. [Ex. B, pg. 250, lines 6-20]. Clearly, one ejection pattern article is not efficient basis for an opinion and equates to the fact that this expert did not adequately account for alternative explanations. *See Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000)(experts must consider possible variables).

5. Mr. Weaver's graduate studies/peer review articles will not assist the jury.

Mr. Weaver's graduate studies involved determining the osteoarthritis disease process in humans while the rigid blunt trauma impact on knee tissue in rabbits and canines. [Ex. B, pg.172,

9

lines 12-21].   He also studied product evaluation as it relates to ankles, knees and skulls in human

cadavers. [Ex. B, pg. 175, line 19 through pg. 176, line 4].   Mr. Weaver's current PhD research is

on studying shoe surface interface between athletic shoes and various synthetic turfs. [Ex. B,

pg.140, line 24 through pg. 142, line 5]. This research has nothing to do with mechanics of an

officer-involved shooting and thus, would not assist trier of fact in this case.

Rather than issuing peer reviewed articles regarding police weapon discharge cases, Mr.

Weaver's issued peer reviewed articles involving acute and cumulative the neck, lower back, knee,

ankle and foot of the human and knee of the rabbit and canine. [Ex. B, pg. 170, line 22 through pg.

171, line 25; pg. 180, lines 4-11].   Mr. Weaver participated in writing a paper on occupant lower

extremity behavior during moderate and high-speed rear impacts; determination of dynamic ankle

ligament strains; injury to the neck during an airborne phase of a vehicle rollover and is currently

working on an article concerning the brain and the skull. [Ex. B, pg.176, lines 8-11; pg. 176, line

17 through pg. 177, line 1; pg. 177, lines 21-23; pg.178, line 8 through pg. 179, line 4; pg. 179,

lines 5-23; pg. 180, lines 12-16].   Again, these studies have nothing to do with mechanics of an

officer-involved shooting and thus, would not assist trier of fact in this case.

**B.  Mr. Weaver's opinions are speculative, are not supported by sufficient data, and will not assist the jury.**

1.  Mr. Weaver's opinions are mere speculation.

Mr. Weaver's opinions are mere speculation.  Mr. Weaver admits he does not have the data

to create an animation to what "I believe" exactly happened. [Ex. B, pg. 129, lines 14-24].

Mr. Weaver placed Baker with his buttocks down low and the upper part of his body erect

and twisted to fit the trajectory he created. [Ex. B, pg. 210, line 13 through pg. 211, line 3]. When

Mr. Weaver was questioned about his rendition of Baker's awkward position, Mr. Weaver

10

admitted that the posture in which he placed Baker in his model is by "no means am I saying this is the precise posture that he had." [Ex. B, pg. 215, lines 4-15].

Before this case, Mr. Weaver has not been asked to determine a bullet trajectory.  [Ex. B, pg. 145, lines 3-7].  Weaver claimed he determined the downward slope of the trajectory but failed to give the degree of the slope or the angle or the calculation he used to obtain the degree. [Ex. B, pg. 191, line 24 through pg. 193, line 6]. When he was reminded of the height and weight of Baker and Officer Castro, after Weaver claimed he knew/calculated the slope of the trajectory, Weaver was asked again the distance between Baker and Officer Castro which he stated he did not know nor was asked to analyze it. [Ex. B, pg. 197, line 18 through pg. 198, line 8].  Mr. Weaver stated he could not determine how far apart Baker and Castro were. [Ex. B, pg. 194, line 25 through pg. 195, line 22].  Weaver opined that he did not need to consider the drop (slope, trajectory) of the bullet over the short distance from Castro to Baker's body. [Ex. B, pg. 193, line 25 through pg. 194, line 22].  Mr. Weaver stated that because of the limitations of the physical evidence, and because he does not know the posture of Baker, he could not determine the distance between Baker and Castro. [Ex. B, pg. 193, line 25 through pg. 194, line 22].

Rather than actually determining the slope through some mathematical calculation, Mr. Weaver simply referred to the medical examiner's opinion that the bullet trajectory was left to right and inferior to anterior in his deposition – a broad description that could result in any number of potential body positions before and after entry.  [Ex. B, pg. 226, lines 8-14].

Mr. Weaver admits that if Baker was standing straight up, the trajectory would have been flat with the ground.  [Ex. B, pg. 219, lines 5-23].  Mr. Weaver admitted that because there was a downward trajectory in Baker's body, he assumed Castro was aimed in a downward angle. [Ex. B, pg. 226, lines 22-25].  Mr. Weaver admitted it was entirely possible that Baker was not too far from Officer Castro at the time of the weapon's discharge because of the downward trajectory.

[Ex. B, pg. 223, lines 2-9]. Mr. Weaver admitted it was possible that Baker was leaning over at the time he was shot. [Ex. B, pg. 227, lines 1-3].

Mr. Weaver did not know Castro's exact positioning in relation to the cartridge casing. [Ex. B, pg. 251, line 9 through pg. 252, line 7].  Mr. Weaver knows approximately were the shell casing was located. [Ex. B, pg. 249, lines 8-20].

Mr. Weaver positioned Baker at the corner of the building because he believes the night time video shows the first drop of blood there. [Ex. B, pg. 209, lines 12-15].  Mr. Weaver does not recall if Menefee was asked where the first drop of blood was located on the ground. [Ex. B, pg. 213, lines 1-5].  Mr. Weaver admits the CSU investigator did not show where the blood was located on the diagram.  [Ex. B, pg. 212, lines 6-11].  He came up with the approximate location of the blood based on looking at the video pointed at the ground. [Ex. B, pg. 212, lines 12-24].

Mr. Weaver admits he did not put Baker in the grassy area by the bayou as testified by Castro from the beginning. [Ex. B, pg. 217, lines 15-24].  Mr. Weaver found that the distance of 26 feet from the first drop of blood were 26 feet, and he did not believe Baker ran the distance. [Ex. B, pg. 201, line 24 through pg. 202, line 1].  Further, Mr. Weaver did not believe that Baker could run the 26 feet from the bayou to the first drop of blood and then continue running another 55 feet before he fell behind the electrical pole. [Ex. B, pg. 201, line 24 through pg. 202, line 9]. Yet Mr. Weaver has no medical or other expertise to support these statements.

While Mr. Weaver claims he has no opinion on whether blood would have immediately exited Baker's body from the entry wound, nevertheless he positioned Baker immediately adjacent to where he believed the first blood spatter was located.  [Ex. B, pg. 201, lines 3-6].  Weaver admitted he placed Baker next to the corner of the building solely because of the drop of blood allegedly behind him.  [Ex. B, pg. 216, lines 2-10].  Mr. Weaver admits he does not know when

the blood would come out of Mr. Baker and he could have still been moving at the time he was shot. [Ex. B, pg. 211, lines 5-14].

Clearly, Mr. Weaver cannot reasonably determine where Baker and Castro were located at the time of the weapon discharge or how Baker was positioned at the time of the bullet penetration. The diagram presented has Baker in a preposterous position of assuming a squatting upon a commode while having his chest flayed to the right and his arms out.   Rather than helping the jury, Mr. Weaver would not only confuse the jury with his suppositions.  Further, Mr. Weaver appears to want the facts that are available to fit his rendition of what occurred rather than what Castro told the investigators.

2.  Mr. Weaver did not base his opinions on sufficient facts.

Mr. Weaver's opinions are not based on sufficient facts to be reliable.  Indeed, Mr. Weaver was unaware of numerous facts in this case.  He was not given the statements of the witnesses that evidence Baker's aggressive behavior towards Officer Castro. [Ex. B, pg. 213, line 25 through pg. 214, line 10].  Witnesses told police that Baker was raising his arms in an aggressive manner towards Officer Castro. [Ex. B, pg. 214, lines 12-16]. While Mr. Weaver holds himself out as a biomechanical engineer which crosses with human factors, Weaver was not given the information of how Baker rammed his shoulder into Castro's chest prior to running behind the shopping center. He was not aware that Baker had become an aggressor towards Castro in the lit public area in the front of the shopping center.  The witnesses told how Baker had raised his arms in an aggressive rather than submissive posture, and this human factor should have been provided to the biomechanical engineer.

Mr. Weaver did not know the stance Officer Castro had at the time of the weapon discharge. [Ex. B, pg. 221, lines 5-7].  Mr. Weaver does not know whether Officer Castro had his legs apart at the time of the weapon discharge.  [Ex. B, pg. 221, lines 8-10].  Mr. Weaver does not know if

13

Officer Castro had his knees bent at the time of the weapon discharge. [Ex. B, pg. 221, lines 11-16].

Mr. Weaver does not know if Baker was right or left handed or ambidextrous.  [Ex. B, pg. 218, lines 19-21].  Mr. Weaver admits that whether a person is right or left handed will affect whether the person will turn one way or another. [Ex. B, pg. 218, line 22 through pg. 219, line 3].

3. Mr. Weaver's methodology is not generally accepted in the scientific community.

Although one would expect an engineer to perform mathematical equations to in formulating his opinions, Mr. Weaver used no mathematical equation in this case.  [Ex. B, pg. 225, line 1 through pg. 226, line 6].  While Mr. Weaver used a special scanner to make a scaled drawing of the area, he testified he did not need measurements for calculations. [Ex. B, pg. 25, lines 4 to 9].  Mr. Weaver did not put calculations in his report because he did not have any calculations. [Ex. B, pg. 219, line 24 through pg. 220, line 1].  Mr. Weaver testified that there was no mathematical calculation to determine how far away Castro had to be to have a downward trajectory into Jordan Baker's body; Weaver said it was a geometric determination.  [Ex. B, pg. 193, line 25 through pg. 194, line 5].

When a request was made for the calculations on this geometric determination, Mr. Webster stated that "all you have to do is look at my model, and so look at the geometry of it…" [Ex. B, pg. 195, lines 2-11].  Mr. Webster claimed the model included the height and weight of the Baker and Castro and the entrance point and rest point of the bullet and he created the "digitally accurate model down to the fractions of a millimeter…" [Ex. B, pg. 195, lines 7-28].  Mr. Webster was asked why he did not put his measurements and calculations in his report, he stated that he put them in his model in the report which has all the geometry and the dimensions and the analysis

14

associated with it which can be tested and analyzed. [Ex. B, pg. 219, line 24 through pg. 220, line 5].

A request was made for the information that goes behind the diagrams so they could be duplicated, and Mr. Weaver claimed he would provide the information. [Ex. B, pg. 220, lines 6-17].  When asked for the calculations to test the analysis and diagram rendition, Mr. Weaver stated that it was unorthodox for him to provide that information and *did not follow what was generally accepted in the scientific community*.  [Ex. B, pg. 195, line 20 through pg. 197, line 1] ("It's a little unorthodox.  It certainly doesn't follow what's generally accepted in the scientific community and what an engineering analysis encompasses when you're talking about geometry.").  Mr. Weaver was further questioned about the terms he used in his geometric analysis, he testified that it is based on anthropometry, based on the measurements at the scene, and biomechanics in terms of postures which cannot be plugged in a mathematical equation. [Ex. B, pg. 224, line 10 through pg. 226, line 6].  Mr. Weaver also discussed that as he was writing his report, it evolved as he walked through the analysis.  [Ex. B, pg. 63, line 24 through pg. 64, line 8].

Trial courts are deemed to be "gate-keepers," whereby they are required to make preliminary assessments of whether the reasoning or methodology underlying the testimony is scientifically *valid* and whether the reasoning or methodology *can be properly applied* to the disputed factual issues. *Pipitone v. Biomatrix,* 288 F.3d 239, 243-44 (5th Cir. 2002) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592-93, 113 S. Ct. 2786, 2796 (1993) (emphasis added)). Expert testimony must be both relevant *and reliable* to be admissible. *Id.* The Court's duty "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that *characterizes the practice of such an expert in the relevant field*." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238 (1999).  Here, Mr. Weaver admits that

his methodology is not generally accepted in the scientific community.  Thus, his opinion testimony should be excluded.

4.  <u>Mr. Weaver is not qualified to opine on trajectory or ejection patterns, and relied solely on articles to support his report.</u>

Despite Mr. Weaver's lack of knowledge in the area of weapon discharges, he issued a report and attached articles from experts in the fields of bullet trajectory and case ejection patterns. Although Mr. Weaver is not providing an opinion on trajectory, he referred to 2011 Folio article in his report which discussed ballistics trajectory including calculating trajectory path of the bullet inside the human body.  The testers used the Cartesian positioning system to give accurate trajectories inside the body with a mathematical calculation.  [Ex. B, pg. 187, line 24 through pg. 188, line 6].  Mr. Weaver was familiar with Cartesian coordinates but he was not familiar with the software use in the testing.  [Ex. B, pg. 188, lines 7-15].  Mr. Weaver admitted the article was to allow using a calculation to help radiologists make a rapid noninvasive depiction of damaged tissue so they could determine which organs were damaged and to in a perform surgery there. [Ex. B, pg. 89, lines 2-9].  Mr. Weaver did not use the formula provided in the article.  [Ex. B, pg. 190, lines 9-11].

While Mr. Weaver testified he reviewed six x-rays of Baker's chest, he has no radiological background. [Ex. B, pg. 120, lines 15-21; pg. 189, lines 10-11]. Further, Mr.  Weaver admitted he did not consult with a radiologist in reading Baker's x-rays. [Ex. B, pg.  189, lines 12-25].

Although Mr. Weaver is not providing an opinion on ejection patterns, nevertheless his report referred to the only ejection pattern article he could locate.  [Ex. B, pg.  250, lines 5-20].

5.  <u>Mr. Weaver's field of expertise is not the subject matter of this lawsuit</u>.

In his deposition, Mr. Weaver stated that he had testified as an expert in trial between fifteen to twenty-five times, at least three of those times in Texas. [Ex. B, pg. 242, line 13 through

pg. 243, line 1].  While this may be true, Mr. Weaver was the extensively examined regarding the deposition or trial testimony he has provided in the last three years.  Those cases involved Mr. Weaver's expertise in mechanical failures, blunt trauma automobile and railroad accidents and workers compensation accidents.  [Ex. B, pg.  82, line 8 through pg. 114, line 13].  The subject matter of this case is clearly outside Mr. Weaver's knowledge and expertise.

Mr. Weaver testified that his understanding was that Baker's posture, in terms of the position of his torso, would be more in the way of Baker moving away from Officer Castro. [Ex. B, pg. 214, line 18 through pg. 215, line 2].

When Mr. Weaver went to the site and was standing behind the alley, he admitted it was pretty dark.  [Ex. B, pg.  249, lines 21-23].   In fact, Mr. Weaver testified he was "a little creeped out" in the dark back alleyway. [Ex. B, pg. 34, line 20 through pg. 35, line 1].  Mr. Weaver admitted Officer Castro was in a highly intense situation. [Ex. B, pg. 216, lines 12-22].  While Mr. Weaver opined to the conclusion that Baker was turning away, he could not provide any information or measurements or calculations to support his conclusion.  Because Mr. Weaver was not forthcoming with measurements or calculations or terms to test his analysis to support his conclusion, the defendants have been placed at a disadvantage to fight a diagram with imbedded facts in the picture.  Mr. Weaver has not shown he can reasonably determine Baker's intended travel at the time he was shot.

Mr. Weaver claims he provided the metadata for the scanner. [Ex. B, pg. 47, line 24 to page 48, line 10.  However, Defendants never received that information.  Mr. Weaver obtained the difference in the height of the driveway vs the embankment but did not have the information at his deposition nor produced it during discovery. [Ex. B, pg.  222, lines 15-17]. Further, Mr. Weaver provided a flash drive at his deposition claiming the amount of paper was so enormous he required to place it in electronic form rather than paper form for defendants to review.  [Ex. B, pg. 130, line

17

25 through pg. 131, line 6]. Also, his notes in a power point presentation were included in the flash drive, but Mr. Weaver testified it was mostly photographs and contained the same information already in his report. [Ex. B, pg. 131, line 16 through pg. 135, line 5].

## I.    CONCLUSION

Mr. Weaver's unsupportable opinions should be excluded. Mr. Weaver is not qualified to testify in a weapon discharge case and does not have technical or specialized knowledge which will assist the jury to understand the evidence or to determine a fact in issue. His purported testimony is not based upon sufficient facts or data, is not the product of reliable principles and methods, and Mr. Weaver has not applied sound principles and methods reliably to the facts of the case. Therefore, his opinions and conclusions are not admissible and should be excluded.

Respectfully submitted,

RONALD C. LEWIS
City Attorney

DONALD H. FLEMING
Chief Labor, Employment and Civil Rights

By:      /s/ *Jennifer F. Callan*

Sr. Assistant City Attorney
State Bar No.:  00793715
Federal ID No.: 22721
P.O. Box 368
Houston, TX 77001-0368
Tel: (832) 393-6286
Fax: (832) 393-6259
Jennifer.Callan@houstontx.gov
Attorney In Charge

Suzanne R. Chauvin
Senior Assistant City Attorney
Southern District Bar No. 14512

Texas State Bar No. 04160600
P.O. Box 368
Houston, TX 77001-368
900 Bagby, 3rd Floor
Houston, TX 77002
Tel: (832) 393-6219
Fax (832) 393-6259
Suzanne.Chauvin@houstontx.gov

ATTORNEYS FOR DEFENDANT
THE CITY OF HOUSTON

## CERTIFICATE OF CONFERENCE

I certify that on February 28, 2018, I conferred with David Owens, attorneys for Plaintiff the Estate of Jordan Baker, by and through administrator Janet Baker, concerning the foregoing Motion to Exclude Testimony of Plaintiff's Expert Brian T. Weaver, P.E..  Mr. Owens advised the undersigned that they are opposed to this Motion.

*/s/ Jennifer F. Callan*

## CERTIFICATE OF SERVICE

I certify that on March 2, 2018, a copy of Defendants' Motion to Exclude the Testimony of Plaintiff's Expert Brian T. Weaver, P.E. was served to the following counsel of record via Electronic Court Filing (ECF):

Jon Loevy
Mark Loevy-Reyes
Arthur Loevy
David B. Owens
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
***Attorneys for Plaintiff***

Billy Joe Mills
FIRMEQUITY
444 N. Wabash Ave., 5th Floor
Chicago, IL 60611
***Attorney for Plaintiff***

*/s/ Jennifer F. Callan*

19