IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF JORDAN BAKER, by and through administrator, JANET BAKER, | ) ) ) | No. 4:15-cv-3495 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Hon. Judge Sim Lake, J. Hon. Nancy Johnson , Mag. |
| JUVENTINO CASTRO, *et al.* | ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**

**DEFENDANTS' MOTION TO EXCLUDE OR LIMIT TESTIMONY OF**

**<u>PLAINTIFF'S EXPERT BRIAN T. WEAVER, P.E.</u>**

# Table of Contents

Table of Authorities ............................................................................................. ii

I.     Statement and Nature of the Proceedings ...................................................... 1

II.    Issue ............................................................................................................... 1

III.   Summary of Argument ................................................................................... 1

IV.    Argument ........................................................................................................ 3

   A.     Applicable Legal Standard ........................................................................ 3

   B.     Weaver Is Qualified To Testify About His Proffered Opinions ................ 5

      1.    Weaver Has Specialized Knowledge and Skill ...................................... 5

      2.    Defendants' Challenges to Weaver's Qualifications Fail ....................... 7

   C.     Weaver's Opinions Are Reliable .............................................................. 11

      1.    Weaver Relied on Sufficient Facts ...................................................... 11

      2.    Weaver Applied a Reliable Methodology ............................................ 14

      3.    Weaver's Reconstruction, Based Upon a Review of the Scene and Other Sufficient Facts, was not " Mere Speculation" .................................................... 15

   D.     Weaver's Opinions Are Relevant and Will Assist The Jury .................... 17

   E.     Defendants Have Been Given Complete Discovery ................................. 19

Conclusion ....................................................................................................... 19

# Table of Authorities

## Cases

*Bocanegra v. Vicmar Servs., Inc.,*
320 F.3d 581 (5th Cir. 2003)....................................................................................3

*Bourland v. City of Redding,*
No. CIV S-09-3195-KJM, 2013 WL 145030 (E.D. Cal. Jan. 11, 2013) ..................10

*Bryan v. John Bean Div. of FMC Corp.,*
566 F.2d 541 (5th Cir. 1978).................................................................................13

*Burkhart v. Dickel,*
No. CCB-12-3320, 2015 WL 9478193 (D. Md. Dec. 29, 2015) ...............................10

*Burleson v. Texas Dep't of Crim. Justice,*
393 F.3d 577 (5th Cir. 2004)....................................................................................3

*Carter v. Massey–Ferguson, Inc.,*
716 F.2d 344 (5th Cir.1983)..................................................................................13

*Curtis v. M & S Petroleum, Inc.,*
174 F.3d 661 (5th Cir. 1999)..................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
509 U.S. 579 (1993) ............................................................................................3, 11

*Dixon v. International Harvester Co.,*
754 F.2d 573 (5th Cir. 1985)....................................................................................8

*Ehrenberg v. State Farm Mutual Auto. Ins. Co.,*
2018 WL 1757349 (E.D. La. Apr. 12, 2018) ........................................................7, 18

*Gill v. State Farm Lloyds,*
2015 WL 7455534 (E.D. Tex. Nov. 23, 2015) ...........................................................9

*Graham v. Hamilton,*
872 F. Supp. 2d 529 (W.D. La. 2012)....................................................................12

*Greenwood Utils. Comm'n v. Mississippi Power Co.,*
751 F.2d 1484 (5th Cir. 1985) .............................................................................7, 13

*Herrera v. Werner Enterprises, Inc.,*
No. SA-14-CV-385-XR, 2015 WL 12670443 (W.D. Tex. Sept. 28, 2015).....6, 12, 13

*Huval v. Offshore Pipelines, Inc.,*
86 F.3d 454 (5th Cir. 1996)......................................................................................9

*Iwanaga v. Daihatsu Am., Inc.,*
No. SA 99-CA-711 WWJ, 2001 WL 1910564 (W.D. Tex. Oct. 19, 2001) ....7, 12, 13

*Johnson v. Arkema, Inc.,*
685 F.3d 452 (5th Cir. 2012)..................................................................................11

*Jones v. Harley-Davidson, Inc.,*
2016 WL 5234745 (E.D. Tex. Sept. 22, 2016) .........................................................8

*Kumho Tire Co. v. Carmichael,*
526 U.S. 137 (1999) ..................................................................................................4

*Lambert v. State Farm Fire & Cas. Co.*,
  568 F. Supp. 2d 698 (E.D. La. 2008) .............................................................. 3
*Mathis v. Exxon Corp.*,
  302 F.3d 448 (5th Cir. 2002) ...................................................................... 17
*Maxwell v. Ford Motor Co.*,
  160 F. App'x 420 (5th Cir. 2005) ................................................................ 13
*Moore v. Ashland Chem. Inc.*,
  151 F.3d 269 (5th Cir. 1998) ........................................................................ 4
*Moore v. Int'l Paint, L.L.C.*,
  547 F. App'x 513 (5th Cir. 2013) ................................................................ 17
*Nunn v. State Farm Mut. Auto Ins. Co.*,
  2010 WL 2540754 (N.D. Tex. June 22, 2010) ............................................... 4
*Peteet v. Dow Chemical Co.*,
  868 F.2d 1428 (5th Cir. 1989) .................................................................... 13
*Pipitone v. Bromatrix, Inc.*,
  288 F.3d 239 (5th Cir. 2002). ....................................................................... 3
*Reynoso v. Ford Motor Co.*,
  No. CIV.A. B-03-120, 2005 WL 5994183 (S.D. Tex. Sept. 27, 2005) ........... 6, 12, 13
*Stevens Transp., Inc. v. Glob. Transp.*, LLC,
  No. 6:15-CV-552-MHS-JDL, 2016 WL 9244669 (E.D. Tex. May 24, 2016) ....... 16
*United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., Miss.*,
  80 F.3d 1074 (5th Cir. 1996) ........................................................................ 4
*United States v. Wen Chyu Liu*,
  716 F.3d 159 (5th Cir. 2013) ........................................................................ 8
*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) ........................................................................ 4
*Wheeler v. John Deere Co.*,
  935 F.2d 1090 (10th Cir. 1991) .................................................................... 8

## Other Authorities

FED. R. EVID. 702,
  Advisory Committee's Note (2000) ............................................................... 4

iii

## I.      Statement and Nature of the Proceedings

This civil rights matter, a deadly force case involving the shooting death of Jordan Baker by a Houston Police Department Officer, is before the Court following discovery and in the midst of dispositive and Rule 702 briefing.

## II.     Issue

Should the testimony of Plaintiff's experienced reconstruction expert, Brian T. Weaver, be excluded under Federal Rule of Evidence 702?

## III.    Summary of Argument

In this case, both sides retained scene reconstruction experts to examine important issues related to the shooting of Jordan Baker by Officer Castro. There should be no dispute that an analysis of the shooting scene is a central aspect at trial. Unlike Defendants' expert, Plaintiff's reconstruction expert went to 5700 W. Little York and conducted a digital scan of the alley. Mr. Weaver was able to input the numbers and figures from the crime scene analysts into an accurate model of the scene.

Like Defendants' expert, based upon the location of the spent bullet casing and blood trail, Mr. Weaver has opined that Mr. Baker's likely location at the time of the shooting was in the alley and not north of the alley in the grass next to the storage facility. Mr. Weaver is of incredible importance because the only other witness to the shooting, Jordan Baker, is deceased. Mr. Weaver's background makes him amply qualified to perform accident reconstruction; he has done it in scores of other cases.

Applying that reliable methodology, Mr. Weaver offers the following opinions: (1) The bullet's trajectory through Mr. Baker's torso can be described as: from his left to right, superior to inferior, and anterior to posterior: (2) The trajectory of the bullet within Mr. Baker's torso indicates that Castro discharged his weapon while aiming with a downward angle; (3) Mr. Baker's injuries indicate that his torso was rotated clockwise in the axial plane with respect to Castro's weapon; (4) Mr. Baker's posture and the trajectory of the bullet are consistent with a scenario in which Mr. Baker was rotating his body clockwise and away from Officer Castro while attempting to accelerate in the opposite direction at the time Castro discharged his weapon; (5) The physical evidence is inconsistent with Castro's statement, affidavits, deposition testimony, and grand jury testimony regarding the location and the posture of Mr. Baker when he discharged his weapon. Dckt. 115-1 at 4.

Defendants have filed a motion to exclude or limit Weaver's testimony in this case. Dckt. 115. In support of their motion, Defendants assert that Weaver is not qualified, *see id.* at 6-10, 16, and also that the opinions he offers are speculative, not based on sufficient data, and not helpful to the jury. *Id.* at 10-15.

All of these arguments badly miss the mark. Instead of attacking the opinions that Weaver actually offers in this case, Defendants' motion knocks down a classic straw-man and offers a litany of random criticisms that have no true bearing on any matter in this case. *See, e.g.*, *id.* at 9 (complaining that Weaver does not personally own a gun); 17 (criticizing Weaver for feeling "a little creeped out" when he went to inspect the alley where the shooting occurred); 17-18 (complaining that

Weaver provided data relating to his analysis on a thumb drive instead of on paper).
These are obvious distractions. In reality, Weaver is amply qualified to testify, and
each of his opinions passes muster under the *Daubert* standard. Defendants' motion
should be denied.

## IV.    Argument

### A. Applicable Legal Standard

Rule 702 governs the admissibility of expert testimony, and *Daubert v.
Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "provides the analytical
framework" for determining whether expert testimony meets Rule 702's metric. *See
Pipitone v. Bromatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and
nonscientific expert testimony is subject to the *Daubert* framework, which requires
courts to make a preliminary assessment to "determine whether the expert
testimony is both reliable and relevant." *Burleson v. Texas Dep't of Crim. Justice*,
393 F.3d 577, 584 (5th Cir. 2004). "With respect to the determination of relevancy . .
. the proposed expert testimony must be relevant 'not simply in the way all
testimony must be relevant [pursuant to Rule 402], but also in the sense that the
expert's proposed opinion would assist the trier of fact to understand or determine a
fact in issue.'" *Lambert v. State Farm Fire & Cas. Co.*, 568 F. Supp. 2d 698, 712
(E.D. La. 2008) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th
Cir. 2003)).

When assessing reliability, the Supreme Court has enumerated five
nonexclusive factors to consider when assessing whether the methodology upon

which an expert rests an opinion is reliable. These factors are: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

When considering expert testimony, "[t]he proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see Nunn v. State Farm Mut. Auto Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

That said, the gatekeeping function is narrow: "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Pipitone*, 288 F.3d at 247 (quoting FED. R. EVID. 702, Advisory Committee's Note (2000)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Accordingly, district courts must accord proper deference to "'the jury's role as the proper arbiter of disputes between conflicting opinions.'" *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). In so doing,

4

"[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Id.*

## B.  Weaver Is Qualified To Testify About His Proffered Opinions

### 1.  Weaver Has Specialized Knowledge and Skill

Brian Weaver is a licensed Professional Engineer and expert in the fields of biomechanics, accident reconstruction, and computer simulation. Dckt. 115-1 at 29-30. He holds both a B.S. and M.S. in engineering mechanics from Michigan State University. *Id.* Weaver's graduate training and research was conducted in the Orthopaedic Biomechanics Laboratory at Michigan State University, which was a joint collaboration with the College of Engineering and the School of Osteopathic Medicine. *Id.* His research and publications focus on the effects of blunt trauma to soft tissues. *Id.*

Over his career, Weaver has developed expertise in both biomechanics and accident reconstruction; he has performed investigations involving vehicle accidents, pedestrian accidents, workplace accidents, and aviation accidents. *Id.* Mr. Weaver has also used his expertise in vehicle accident reconstruction to determine various aspects of a collision, including vehicle speeds, impact forces, line of sight, etc. *Id.* He has applied this expertise in the investigation of low speed collisions, multi-vehicle collisions, heavy truck collisions, pedestrian impacts, and railroad grade crossing accidents. *Id.* He continues to conduct research and publish with the Orthopaedic Biomechanics Laboratory at Michigan State University. *Id.*

5

Weaver also holds memberships in the American Society of Biomechanics, the Society of Automotive Engineers, and the American Society of Mechanical Engineers. *Id.* He is an Academic Advisory Board Member in Life Science and Biomedical Engineering at Lawrence Technological University. *Id.* He has a number of peer-reviewed publications in the field of biomechanics, and he holds professional engineering licenses in four different states. *Id.*  Weaver has testified as an expert in dozens of cases, *id.* at 35-48, and has testified in court approximately 15-20 times, *see* Dckt. 115-2 (Weaver Dep.) at 242-43. Weaver is more than qualified to testify about his opinions in this case, and indeed many courts have repeatedly recognized experts with qualifications like Weaver's may opine about the mechanics of a decedent's injuries. *Herrera v. Werner Enterprises, Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at *3 (W.D. Tex. Sept. 28, 2015) (finding biomechanical expert "qualified to testify about all matters relating to biomechanics and accident reconstruction, including the forces in the accident, the damage to the vehicles, and the injury causation forces in the accident and their hypothetical effect on the human body" and collecting cases from other jurisdictions reaching the same conclusion); *Reynoso v. Ford Motor Co.*, No. CIV.A. B-03-120, 2005 WL 5994183, at *1–2 (S.D. Tex. Sept. 27, 2005) (biomechanics expert with background in engineering qualified to give opinions about the biomechanics of a decedent's injuries, including the probable injury-producing forces that resulted in her death); *see also id.* at *3 ("Biomechanics is an accepted topic within the field of mechanical engineering as indicated by the existence of conferences and journals

devoted to the topic as well as courses taught in major university engineering departments."); *Iwanaga v. Daihatsu Am., Inc.*, No. SA 99-CA-711 WWJ, 2001 WL 1910564, at *11 (W.D. Tex. Oct. 19, 2001) (biomechanics expert with background in accident reconstruction qualified to give opinions on expected kinematics in auto collision and probable mechanism of injury).

### 2. Defendants' Challenges to Weaver's Qualifications Fail

Defendants take issue with the fact that most of the cases in which Weaver has testified involved vehicle accidents (car, train, bike, *etc.*), but the absence of a vehicle in this case does not somehow render Weaver unqualified to give a biomechanical opinion. *See* Dckt. 115-2 (Weaver Dep.) at 229-30 (nothing about this being a shooting case as opposed to a car or bike accident calls for different analysis in this case). Given his qualifications, this testimony is entitled to deference. *Cf. Greenwood Utils. Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1495 (5th Cir. 1985) (explaining that "deference ought to be accorded to the expert's view that experts in his field reasonably rely on such sources of information").

Indeed, the scenarios involving cars, trains, and the like all involve people *plus* sophisticated machines. The absence of a vehicle in the shooting scenario makes Weaver's analysis less complicated, not more so.  Put differently, Mr. Weaver's advanced training as a biomechanical engineer gives him a *greater* degree of expertise than what Defendants imply he should have. *Cf. Ehrenberg v. State Farm Mutual Auto. Ins. Co.*, 2018 WL 1757349, at *3 (E.D. La. Apr. 12, 2018)

(discussing accident reconstruction involving examination of injuries as in the "fields of accident reconstruction and biomechanics").

But, even if that were not the case, there is also no doubt that Weaver's extensive experience as a reconstruction expert and as an educator provides him with the specialization to testify about incident reconstruction here. In fact, "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience" alone or "experience in conjunction with other knowledge, skill training, or education." *Pipitone*, 288 F.3d at 247 (citing Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

Thus, Defendants have it backward. An expert is "not strictly confined to his area of practice, but may testify concerning related applications." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)); *see also See* FED. R. EVID. 702. Accordingly, "a lack of personal experience . . . should not ordinarily disqualify an expert, so long as the expert is qualified based on some other factor provided by Rule 702: "knowledge, skill, experience, training, or education." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013) (citing Fed. R. Evid. 702); *see also Dixon v. International Harvester Co.*, 754 F.2d 573, 579–80 (5th Cir. 1985) (holding an expert did not lack qualifications to testify about the design of a crawler tractor, based on his review of blueprints and photographs, despite a lack of prior experience approving crawler tractor designs); *see also, e.g.*, *Jones v. Harley-Davidson, Inc.*, 2016 WL 5234745, at *2 (E.D. Tex. Sept. 22, 2016) (citing *Liu* and

rejecting *Daubert* qualifications argument for experienced mechanical engineer in a motorcycle case, where Harley-Davidson complained that the expert did not have specialization in motorcycles, had never been employed by a motorcycle company, had never handled or operated a motorcycle and had no "personal experience" with motorcycle braking); *Gill v. State Farm Lloyds*, 2015 WL 7455534, at *2 (E.D. Tex. Nov. 23, 2015) (discussing *Liu* and *Dixon* and concluding, "[l]ikewise in the present case, [the expert] has reviewed pertinent materials and photographs, and can express his opinions regarding the damage to Plaintiff's roof based upon his experience within the construction industry"); *Cf. Huval v. Offshore Pipelines, Inc.*, 86 F.3d 454, 458 (5th Cir. 1996) (affirming qualification of an expert with "general experience" in an industry but not a specialization).

The upshot of the foregoing is that  a "lack of specialization should generally go to the weight of the evidence rather than its admissibility, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Liu*, 716 F.3d at 168 (quoting *Daubert*, 509 U.S. at 596). Thus, Defendants' complaint that Weaver has worked on only one other case involving a police shooting (Dckt. 115 at 8) and the confusing arguments about things Weaver has not even opined on are nothing more than questions they can ask him on the stand.[1]

---

[1] Defendants have made a list of things that Weaver has not opined on—*e.g.*, like blood spatter from human beings at points of missile projectile puncture or penetration wound—but this is all beyond irrelevant because, as far as Plaintiff understands what Defendants are referring to, Weaver does not opine on this or other topics they list. But we know that,

It is also worth noting that, as a substantive matter, many of Defendants'
arguments are just misplaced. Weaver's opinions in this case do not require him to
have expertise in police procedure or ballistics. He is not offering expert opinions in
those areas. Instead, his opinions rest on his application of his expertise in
mechanics, engineering, geometry, and scene reconstruction to the facts of the case.
This is a methodology that can be applied to a range of dynamic scenarios, including
Section 1983 excessive force cases that do not involve vehicles. *See e.g.*, *Burkhart v.
Dickel*, No. CCB-12-3320, 2015 WL 9478193, at *4 (D. Md. Dec. 29, 2015) (expert in
biomechanics permitted to opine on injury causing mechanics in Section 1983
excessive force case); *Bourland v. City of Redding*, No. CIV S-09-3195-KJM, 2013
WL 145030, at *4 (E.D. Cal. Jan. 11, 2013) (allowing biomechanics expert to opine
in excessive force case about whether handcuffs could cause the type of injury that
plaintiff received). In the end, *Daubert* requires that an expert possess "specialized
expertise," and there is no doubt that Weaver has employed that expertise in this
case. He is therefore qualified.[2]

---

regardless of the intended argument, much of this is irrelevant. Both Weaver and Jonathyn
Priest, Defendants' own reconstruction expert reach very similar conclusions about the
location of Baker (near the blood) and Castro (near the shell casing) at the time Castro
discharged his firearm.

[2] Defendants also argue that Weaver's graduate studies and publications "will not assist the
jury in this case," Dckt. 115 at 9, but this argument fundamentally misunderstands the
*Daubert* inquiry.  There is no requirement under *Daubert* that the full-range of an expert's
publications assist the jury. Rather, the expert's *opinion* must "assist the jury" in the sense
that the proffered *opinion* (rather than every item on an expert's resume) is relevant to an
issue that the factfinder will decide.

### C. Weaver's Opinions Are Reliable

Expert testimony is admissible if the court finds that the testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668). Weaver's opinions in this case easily pass this test.

### 1. Weaver Relied on Sufficient Facts

In addition to being based upon his extensive training and experience (which is independently sufficient), Weaver's analysis is based on sufficient facts and data. In order to perform his analysis, Weaver visited the scene of the shooting where he did a personal inspection and conducted a three-dimensional laser scan of the location. Dckt 115-1 at 3. This was truly above and beyond. Defendants' own reconstruction did not take this step. In addition, as Defendants' expert did, Weaver reviewed photos and videos taken of the scene at the time of the shooting, as well as investigative reports documenting the shooting scene. *Id.* Weaver also reviewed various statements of Castro—his homicide statement, his internal affairs statement, his grand jury testimony, and his deposition in this case. *Id.* Weaver also

reviewed the deposition transcripts of people at the scene, including Officer Menefee, the crime scene unit official who documented the scene, and Lt. Becker, who went on the walkthrough of the scene with Castro.

Finally, Weaver also reviewed autopsy records that document the physical state of Jordan Baker's body after the shooting. These are the types of facts that other experts in Weaver's field rely upon, and Courts have found reliance on these categories of facts sufficient to support a biomechanical opinion. *Herrera v. Werner Enterprises, Inc.*, No. SA-14-CV-385-XR, 2015 WL 12670443, at *4 (W.D. Tex. Sept. 28, 2015) (biomechanical expert reviewed incident reports, photographs, medical records, and conducted an independent analysis); *Reynoso v. Ford Motor Co.*, No. CIV.A. B-03-120, 2005 WL 5994183, at *3 (S.D. Tex. Sept. 27, 2005) (biomechanical expert relied on his personal knowledge and experience in engineering, in addition to his review of publications, decedents' medical records, personal inspection of the vehicle, and photos of the accident scene); *Iwanaga v. Daihatsu Am., Inc.*, No. SA 99-CA-711 WWJ, 2001 WL 1910564, at *11 (W.D. Tex. Oct. 19, 2001) (biomechanical engineer relied on photos, research materials, incident reports, medical information, and analyses conducted by other experts); *Graham v. Hamilton*, 872 F. Supp. 2d 529, 537 (W.D. La. 2012) ("The Court finds Jackson has used a reliable methodology. Jackson's report details the series of impacts the Camaro sustained based on a review of the Camaro, police reports, eyewitness accounts, and photographs of the accident scene."). [3]

---

[3] Defendants take issue with the fact that Weaver looked at x-rays of Baker's chest without consulting a radiologist. Dckt. 115 at 16. But as Weaver explained at his deposition, he was

Defendants take issue with the fact that Weaver looked at x-rays of Baker's chest without consulting a radiologist. Dckt. 115 at 16. But as Weaver explained at his deposition, he did not  conduct his own radiological analysis. Rather, he reviewed and relied upon the conclusions reached by the radiologist who prepared a report. Dckt. 115-2 at 188-89. The biomechanics experts whose opinions were deemed admissible in in *Herrera*, *Reynoso*, and *Iwanaga* all likewise reviewed medical records in forming their opinions. Indeed, the fact that Weaver relied upon others with expertise and did not over-extend himself beyond his expertise is a strength, not a weakness. *Cf. Maxwell v. Ford Motor Co.*, 160 F. App'x 420, 424 (5th Cir. 2005) ("Trial courts 'should defer to the expert's opinion of what data they find reasonably reliable.'") (quoting *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989)); *see also Greenwood Utils. Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1495 (5th Cir.1985) (explaining that "deference ought to be accorded to the expert's view that experts in his field reasonably rely on such sources of information"); *see also Carter v. Massey–Ferguson, Inc.*, 716 F.2d 344, 349–50 (5th Cir.1983) (expert need not have personal knowledge of underlying facts); *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 545 (5th Cir. 1978) ("[E]vidence law recognizes that experts often rely on facts and data supplied by third parties.").[4]

---

did not purport to conduct his own radiological analysis. Rather, he reviewed and relied upon the conclusions reached by the radiologist who prepared a report. Dckt. 115-2 at 188-89. The biomechanics experts whose opinions were deemed admissible in in *Herrera*, *Reynoso*, and *Iwanaga* all likewise reviewed medical records in forming their opinions.
[4] Defendants also make the absurd argument that Weaver is somehow not able to testify as an expert on the basis that he not have sufficient facts or data because he did not review statements of the witness who alleged that Baker was acting aggressively toward Castro earlier in the evening. Dckt. 115 at 13-15. At most, this would go to the weight of Weaver's

### 2.  Weaver Applied a Reliable Methodology

Defendants criticize Weaver for not using mathematical calculations to reach his opinions, claiming that without calculations to review, there is no way for them to "test" his conclusions.  Dckt. 115 at 14-15. But as Weaver explained at his deposition, it was not necessary for him to perform mathematical calculations because his opinions are based on his re-creation of the physical scene and the application of principles of geometry and biomechanics to that scene.  Dckt. 115-2 at 195-98. In order to "test" his conclusions, all one has to do is look at his graphic scene recreation and ensure that it was created with accurate data. *Id.* The whole point of doing a digital scan is to generate reliable, scaled images of the scene to assist in reconstruction—the scanner removes the likelihood of human error making the analysis and imagery reliable. Defendants have access to all the same underlying data (documentary evidence and data collected by Weaver's three-dimensional scan). They can easily reproduce all of it and see if Weaver's conclusions check out.

Indeed, Defendants' own experts agree with Weaver on many of the major points of his analysis. Although Defendants did not hire a biomechanics expert in this case, they hired a forensic consultant – Jonathyn Priest – to reconstruct the scene.  Notably, Priest agrees with Weaver that the approximate location of Baker at the time of the shooting is near the blood in the alley; that the approximate

---

testimony. More importantly, it is irrelevant to his actual reconstruction of the scene of the shooting—that witness was not in the alley when Castro killed Baker. As a consequence, that is not the type of data that engineers and biomechanics experts would typically rely upon, and it would not inform a biomechanical analysis of the ultimate shooting encounter.

location of Castro was near the spent cartridge casing; and that Castro fired *west*

down the alley, not north to toward the grass next to the storage facility, as Castro

contends.[5]

### 3. Weaver's Reconstruction, Based Upon a Review of the Scene and Other Sufficient Facts, was not " Mere Speculation"

Defendants argue that Weaver's opinions are "mere speculation." Dckt. 115,

at 10-13. In support of this argument, Defendants point to facts Weaver

acknowledges he cannot determine with 100% certainty. *Id.* (For example, Weaver

did not calculate the downward slope angle of the bullet). But, again, these

arguments miss the mark; they do not focus on Weaver's actual opinions in this

case. Weaver is not offering an opinion about the degree of the bullet's slope, and he

does not need to do so in order to give the opinions he gives in this case. Moreover,

an expert witness who acknowledges when he cannot offer opinions to 100%

certainty is a good thing, demonstrating that he is not simply a hired gun to say

everything that a party wants.

And Weaver has properly admitted the limitations of his reconstruction. It is,

after all, a reconstruction. But the strength of that reconstruction is sound—Weaver

---

[5] Defendants assert that Weaver "admits that his methodology is not generally accepted in the scientific community." Dckt. 115 at 15-16. This argument is disingenuous; Weaver has made no such admission. The only thing that Defendants could possibly base this wildly inaccurate assertion on is quote from Weaver's deposition where he says: "It's a little unorthodox. It certainly doesn't follow what's generally accepted in the scientific community and what an engineering analysis encompasses when you're talking about geometry." But it is clear that when Weaver uttered those words at his deposition; he was not talking about his own methodology—he was referring to an analysis that Defendants' counsel was asking him to perform. It is unfortunate that Defendants would take Weaver's statement so badly out of context and claim that it constitutes an admission that somehow torpedoes his entire analysis.

relied upon an actual scan of the alley; was able to program the height and weight of Castro and Baker; was able to input Officer Menefee's measurements, *etc*. This is sufficient. *See, e.g.*, *Stevens Transp., Inc. v. Glob. Transp.*, LLC, No. 6:15-CV-552-MHS-JDL, 2016 WL 9244669, at *5 (E.D. Tex. May 24, 2016) (rejecting challenge to reconstruction expert opinion where expert relied upon photographs and reconstructions to provide an opinion about what happened during an accident).

Defendants seem to be criticizing Weaver because his opinions do not synch up with Castro's testimony. Br. At 13 ("Mr. Weaver appears to want the facts that are available to fit his rendition of what occurred rather than what Castro told investigators."). Defendants also claim that Weaver admits he "did not put Baker in the grassy area by the bayou as testified by Castro from the beginning." This whole line of argument is extremely misleading. Weaver's opinions specifically tests "what Castro told investigators" and examines whether it is consistent with the evidence to find that Baker was to the north "in the grassy area." Indeed, Weaver's report spends 10 pages discussing and illustrating the version of events Castro told not just investigators but also the new version of events he told at his deposition in this matter when he, for the first time, claimed that Baker was somehow running at a "crouch." Report, at 14-23. Castro's account is simply inconsistent with the physical evidence and in such important respects that, again, not even Defendants' own expert puts Baker "in the grassy area," as Castro claimed. The argument is a non-starter.[6]

---

[6] The same is true of Defendants' criticisms of the images produced by Weaver. The possible physical positioning images are consistent with the physical evidence, as loaded into

Finally, Defendants also seem to argue that Weaver relies on facts that might be mistaken.  See Dckt. 115, at 12 (implying that Weaver relied on incorrect facts about the location of the blood stain and Baker's presence in the grassy area of the bayou). But even if Weaver relied on facts that Defendants dispute, that is fodder for cross examination, not a basis to exclude his opinions. *See Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) ("Of course, when facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. Generally, the fact-finder is entitled to hear [an expert's] testimony and decide whether ... the predicate facts on which [the expert] relied are accurate." (internal quotations and citations omitted)); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("The *Daubert* analysis should not supplant trial on the merits…. Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (internal citations and alterations omitted)).

### D. Weaver's Opinions Are Relevant and Will Assist The Jury

Here, it is hard to imagine how Weaver's analysis would not assist the jury in examining possible scenarios of what took place in the alley when Castro shot Baker. The jury will hear testimony from a number of witnesses and experts (on both sides), and Mr. Weaver is the only expert who has examined the actual scene

---

Weaver's specialized scanning software on the basis of his expertise. The crucial thing, form a forensic perspective (and consistent with Priest) is that Baker was (1) near the blood, (2) to the west of Castro, and (3) turned significantly to his right.

and provided a rendering of what the alley looks like in a meaningful way that will allow the jury to evaluate the entirety of the forensic evidence in the case.

At the risk of being repetitive, it bears emphasizing that the crucial question, as far as the deadly force claim goes, is whether Baker was charging at Castro, as the officer claims, or whether, as Plaintiff claims, Baker was still trying to get away. An illustration of possible scenarios based upon Castro's testimony, a physical scan of the scene, and an input of the measurements taken by the Crime Scene Unit officer will undoubtedly assist the trier of fact in evaluating the evidence.[7] Indeed, courts have found such testimony helpful in situations where the expert's opinions lacked as broad a basis as Weaver's do here. *See, e.g.*, *Ehrenberg*, 2018 WL 1757349, at *4 ("Defendant's concerns that Mr. Smith does not have adequate information regarding walking or vehicle speed or that he did not visit the accident scene may be adequately addressed on cross-examination. These are issues of credibility for the jury to determine and do not implicate methodology on these facts. The Court also finds that some of Mr. Smith's testimony may be useful to the jury because while the jury understands that a car accident may cause injury, the jury are not experts in the types and extent of injuries that may be caused when hit by a vehicle in a specific instance. Therefore, Mr. Smith will be permitted to testify concerning his expert opinion."); *Stevens*, 2016 WL 9244669, at *5.

---

[7] Defendants' odd claims about Weaver's pictures showing Baker crouched and turning away do not warrant any mention other than to say that Weaver's analysis was designed to be consistent with the bullet trajectory. Defendant's own expert has produced images that, while they appear to reflect the wound trajectory, lack clarity. Gripes about demonstratives are not the stuff that Rule 702 is about. Plainly, giving the jury the option to examine the evidence from all angles will be what matters.

**E.  Defendants Have Been Given Complete Discovery**

The Defendants end their brief with a troubling string of allegations, implying that they did not receive all of the discovery to which they were entitled. Br. at 17-18. Defendants have never raised this issue with Plaintiff's counsel, and any insinuation that anything whatsoever was withheld is completely unfounded. It is also irrelevant to the Rule 702 issue. If Defendants believe that they did not receive complete discovery, they should (and could) have requested it. They also could have filed a motion to compel. These distracting lines are, at best, disingenuous.

**Conclusion**

For the foregoing reasons, Defendants' Motion to Exclude or Limit Testimony of Plaintiff's Expert Brian T. Weaver, P.E., should be denied.

Dated: May 9, 2018

RESPECTFULLY SUBMITTED,

/s/David B. Owens
*One of Plaintiffs' Attorneys*

Jon Loevy
Mark Loevy-Reyes
David B. Owens
LOEVY & LOEVY
311 North Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900

Billy Joe Mills
FIRMEQUITY
858 West Armitage Avenue
Suite 101
Chicago, IL  60614
(847) 207-9064

19

## <u>CERTIFICATE OF SERVICE</u>

I, David B. Owens, an attorney, hereby certify that on May 9, 2018, I filed the foregoing Response in Opposition to Defendants Juventino Castro and the City of Houston's Motion Exclude or Limit Testimony of Plaintiff's Expert Brian T. Weaver, P.E., using the Court's CM/ECF system, which effected service on all counsel.

<u>/s/ David B. Owens</u>
*One of Plaintiff's Attorneys*