```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF TEXAS
 2                      HOUSTON DIVISION

 3   ESTATE OF JORDAN BAKER,    §   No. 4:15-cv-3495
     by and through             §
 4   administrator,             §
     JANET BAKER                §
 5                              §
         Plaintiff              §
 6                              §
     VS.                        §   Hon. Judge Sim Lake
 7                              §
     JUVENTINO CASTRO, THE      §
 8   CITY OF HOUSTON, RPI       §
     MANAGEMENT COMPANY,        §
 9   LLC, and RPI INTERESTS     §
     I, LTD                     §
10                              §
         Defendants             §   JURY TRIAL DEMANDED
11

12

13                     ORAL DEPOSITION OF
                         TERRY BRATTON
14                     JANUARY 18, 2018

15

16      ORAL DEPOSITION OF TERRY BRATTON, produced as a

17   witness at the instance of the Plaintiff and duly sworn,

18   was taken in the above styled and numbered cause on

19   Thursday, January 18, 2018, from 10:20 a.m. to 6:59 p.m.,

20   before Joanna Sagastisado, CSR in and for the State of

21   Texas, reported by computerized stenotype machine, at the

22   City of Houston Legal Department City Hall Annex,

23   900 Bagby, 4th Floor, Houston, Texas  77002, pursuant to

24   the Federal Rules of Civil Procedure and any provisions

25   stated on the record herein.
```

1      Q.   Vallery?

2      A.   No.

3      Q.   This is listed as an unknown subject in the
4 report.   I can pull the officer's -- I think it's the
5 next one on your list, it's the name of the officer.

6      A.   No, I wasn't there.

7      Q.   Okay.   The Rollerson?

8      A.   No.

9      Q.   Brazile?

10     A.   No.

11     Q.   Ramos?

12     A.   Yes.

13     Q.   And then there's another unknown subject, the
14 name of the officer, I think it's --

15     A.   No.   I wasn't at that one.

16     Q.   Okay.   So you were at Ramos and Salazar-Limon
17 and Lara.   Is that right?

18     A.   Yes.

19     Q.   Now, is it your testimony that because of your
20 presence at the scene -- and were you there for the
21 walk-through on all three of those?

22     A.   Yes.

23     Q.   And is it your testimony that your presence at
24 the scene during the walk-through during all three of
25 those, in the aftermath of those instances, that you can

| | |
|---|---|
| 1 | testify based upon your personal knowledge that the |
| 2 | officers actually feared for their life or the safety of |
| 3 | others? |
| 4 |     A.  Yes. |
| 5 |     Q.  So different than the Guidry, you're not just |
| 6 | saying, "well, you --" you're taking it at the word of |
| 7 | the report and the that the -- the officer's statement |
| 8 | that they were in fear should be deemed credited because |
| 9 | you didn't see anything that contradicted.  You're |
| 10 | saying for Salazar-Limon, Lara, and for Ramos that you |
| 11 | can actually testify that the officers were afraid and |
| 12 | that you believed them? |
| 13 |     A.  That's my opinion, yes. |
| 14 |     Q.  So it is your opinion that officer -- the |
| 15 | officer involved in the Salazar-Limon shooting, quote, |
| 16 | "had an immediate fear of serious bodily injury or |
| 17 | death," correct? |
| 18 |     A.  Yes. |
| 19 |     Q.  But with respect to Officer Green and the |
| 20 | Guidry case, it's -- you're crediting the officer's |
| 21 | statement that he had an immediate fear of bodily injury |
| 22 | or death.  Is that right? |
| 23 |     A.  Base upon the totality of the situation, yes. |
| 24 |     Q.  Okay.  And you're saying there's nothing to |
| 25 | contradict that based upon the totality? |

1      Q.  What if they're involved in criminal activity
2   that they're trying to cover up?
3      A.  A possibility.
4      Q.  Possible, so that's not something that you
5   think is very likely?
6      A.  I couldn't get in their head, so I wouldn't
7   know.
8      Q.  Okay.  So tell me about the times when you can
9   get in the officer's head and the times that you can't.
10              MS. SANDMANN:  Objection.
11      A.  I don't know that I can get into anybody's head
12   per se, I can only -- based on the scenes that I'm at,
13   see their demeanor and the flavor of the scenario and
14   then the scenes that I'm not at, read their particular
15   statement as it comes out through the investigation.
16      Q.  (BY MR. OWENS)  Okay.  So are you saying that
17   when you're at the scene, when you've had the
18   opportunity to judge and evaluate the credibility of the
19   officer you can then determine for yourself, yeah, this
20   person was in actual immediate fear.  Is that right?
21      A.  When I see the officer is crying, shaking, that
22   kind of stuff, yeah, I can.
23      Q.  Okay.  And what if it's -- an officer is not
24   crying or shaking or doing any of that kind of stuff,
25   what does that mean?

1    A.  I don't know that it means anything other than
2  the fact that you can just -- you've got a flavor for
3  the scene after you do this for a while, you can just
4  tell.  Different guys have different reactions.  I'll
5  agree with that, but...
6    Q.  So what I want to know is whether or not you
7  know for sure that officer involved in the Bernard
8  shooting actually feared for his immediate safety?
9    A.  Not with 100 percent certainty.
10   Q.  But you believe he did?
11   A.  I do.
12   Q.  So you've issued us a rebuttal report in this
13 case with respect to Mr. Scott's expert report, correct?
14   A.  Correct.
15   Q.  So what I want to understand, and this is
16 somewhat related to what we were just discussing about,
17 is you used a phrase in your report a number of times
18 about "the mind of the reader," what do you mean by
19 that?
20   A.  The perception I had as I read it.
21   Q.  Okay.  Now, you're not purporting in your
22 reports to be in the head of Mr. Scott, right?
23   A.  No.
24   Q.  Do you know Mr. Scott?
25   A.  No.