United States District Court
Southern District of Texas
**ENTERED**
August 31, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ESTATE OF JORDAN BAKER, by and through Administrator, JANET BAKER, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-3495 |
| JUVENTINO CASTRO, THE CITY OF HOUSTON, RPI MANAGEMENT COMPANY, LLC, and RPI INTERESTS I, LTD., | § § § § § | |
| Defendants. | § | |

## ORDER

Pending before the court is Defendants' Motion to Exclude Expert Testimony of Jonathan Arden ("Dr. Arden")(Doc. 108). The court has considered the motion, all related briefing, the expert report, and the applicable law. For the reasons set forth below, the court **DENIES** the motion.

### I.  Case Background

Plaintiff filed this action on December 2, 2015, against Houston Police Department Officer Juventino Castro ("Officer Castro"), the City of Houston, RPI Management Company, LLC, and RPI Interests I, Ltd., alleging that they violated Decedent Jordan Baker's ("Decedent") Fourth and Fourteenth Amendment rights on January 16, 2014, by shooting Decedent on the basis of his race.

## II. Expert Opinion

Plaintiff designated Dr. Arden as an expert in forensic pathology to evaluate the crime scene evidence including: "(1) the cause and manner of [Decedent's] death; (2) the trajectory of the gunshot wounds and whether the wound trajectory is consistent with Officer Castro's account of the shooting; (3) the firing range; (4) [the] nature of injuries to [Decedent's] body; and (5) whether [Decedent] experienced conscious pain and suffering prior to his death."[1]

In 1980, Dr. Arden received his doctor of medicine from the University of Michigan.[2] Upon receiving his degree, he trained in anatomic pathology at New York University Medical Center and in forensic pathology at the Office of the Chief Medical Examiner for the State of Maryland.[3]

The majority of Dr. Arden's career was spent working for the government including almost twenty years in the medical examiners' offices for the cities of New York and Washington D.C.[4] Dr. Arden is currently the president of Arden Forensics, P.C., and works part-time as a forensic pathologist for the Office of Chief Medical

---

[1] See Doc 145, Pl.'s Resp. to Defs.' Mot. to Exclude Expert Test. of Dr. Arden, pp. 1-2.

[2] See Doc. 108-2, Ex. B to Defs.'s Mot. to Exclude Expert Test. of Dr. Arden, Dr. Arden's Rep. of Consultation p. 1.

[3] See id.

[4] See id.

Examiner for the State of West Virginia.[5] Over the course of his career, he has performed over 3,000 autopsies and is familiar with cases involving gunshot wounds.[6] In his deposition, Dr. Arden acknowledged he is not a ballistics expert, although firearms are central to his forensic pathology expertise.[7]

In preparing his report, Dr. Arden reviewed numerous documents including Plaintiff's original complaint, autopsy reports from the Harris County Institute of Forensic Sciences, Houston Police Department's photographs and diagrams, surveillance videos, and weather data from the day of the incident.[8] Additionally, Dr. Arden reviewed transcripts of depositions with exhibits taken from the following people: Officer Castro, Roger Milton, M.D., and Investigator Mirna Torres.[9]

Based on the review of documents, Dr. Arden first provided a brief synopsis of the incident that informed his preliminary opinions.[10] Dr. Arden then offered his analysis and opinions with respect to the cause and manner of death.[11] He agreed with the

---

[5] See id.

[6] See Doc. 108-1, Ex. A to Defs.'s Mot. to Exclude Expert Test. of Dr. Arden, Dr. Arden's Deposition pp. 24, 54.

[7] See id. at 152.

[8] See Doc. 108-2, Ex. B to Defs.'s Mot. to Exclude Expert Test. of Dr. Arden, Dr. Arden's Rep. of Consultation p. 2.

[9] See id.

[10] See id.

[11] See id. at 3.

Harris County Institute of Forensic Sciences medical examiner ("ME") that the gunshot wound to the chest caused a perforation of the chamber of the heart, which is not uncommonly seen in homicide deaths involving gunshot wounds to the chest.[12]

Second, Dr. Arden expressed his opinion with respect to the trajectory of the gunshot wound. While Dr. Arden agreed with the ME, Dr. Arden emphasized that the location of the gunshot wound was predominantly on the right side of Decedent's body.[13] The positioning of the gunshot wound led Dr. Arden to conclude that "Officer Castro had to have been aiming the gun at the entrance wound location, and the gun had to be positioned off to the left side of [Decedent], such that the bullet would follow the known path predominantly to his right within his body."[14] This conclusion departs from the account provided by Officer Castro who asserted that Decedent was facing toward Officer Castro as he fired the gun.[15] Additionally, Officer Castro asserted that Decedent was initially crouched before he started advancing toward Officer Castro.[16] According to Dr. Arden, Officer Castro's account of the

---

[12] See id.

[13] See id. p. 4.

[14] Id.

[15] See id.

[16] See id.

scene would have indicated a greater downward component.[17]

Another observation about the gunshot wound was that the range between the muzzle of the gun and Decedent was, at a minimum, approximately two to three feet.[18] As reflected in the autopsy report, the entrance of the wound was not coated with any gunpowder residue.[19] Thus, Dr. Arden opined that the absence of any residue covering the skin surface or any intervening target demonstrated that "[Decedent] was not in close proximity to Officer Castro when he was shot."[20]

Dr. Arden's fourth opinion involved the numerous abrasions exhibited throughout Decedent's body.[21] Dr. Arden noted that some of the abrasions were indicative of forceful scraping because of the relatively deep and linear characteristics.[22] According to Dr. Arden, the contact with the ground after being shot would not explain the multiple abrasions found on both sides of his face.[23] Dr. Arden opined that the multitude of abrasions suggested the occurrence of another interaction.[24]

---

[17] See id.

[18] See id.

[19] See id.

[20] Id.

[21] See id.

[22] See id.

[23] See id. p. 5.

[24] See id.

Dr. Arden's last opinion stemmed from the significant amount of blood loss that he concluded led to the "primary mechanism of [Decedent's] death."[25] Absent a severe head wound that would have rendered him unconscious, Dr. Arden opined, Decedent "consciously experienced the pain of the gunshot wound, especially the body wall soft tissue injuries and the rib fractures, which are notably painful injuries."[26] Dr. Arden noted that his observation was consistent with the scene of the incident that showed a trail of blood leading to Decedent's body in the alley as he "mov[ed] away from the threat before collapsing."[27]

Pursuant to the crime scene photographs and diagrams, Dr. Arden opined that the positioning of the body and the trail of blood was inconsistent with Officer Castro's account of the incident, which asserted that Decedent was approximately seven to eight feet away when the shot was fired.[28] Dr. Arden found it more plausible that "[Decedent] was in the alley, approximately fifty feet away from the officer, when the shot was fired."[29] Accordingly, Dr. Arden noted that "[Decedent] would have begun to bleed externally upon having been shot[] and would have deposited

---

[25] Id.

[26] Id.

[27] Id.

[28] See id.

[29] Id.

a blood trail along his movements (if any) until he collapsed and died."[30] Dr. Arden averred that this "noteworthy" observation supports the conclusion that Decedent was approximately fifty feet away from Officer Castro.[31]

### III.  Legal Standard

Under the Federal Rules of Evidence and related case law, an expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling to make it appear that his opinion or inference will probably aid the trier in [the] search for truth." United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004)(quoting United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992). If an opinion is based solely or primarily on experience, it "must be grounded in an accepted body of learning or experience in the expert's field." Fed. R. Evid. 702, advisory committee's note, 2000 Amends. The witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Id.

Although an expert need not be highly qualified to testify on a given topic, his testimony on subjects in which he is not

---

[30] Id.

[31] Id.

qualified must be excluded. Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009). An additional limitation on expert witnesses is that they may not offer conclusions of law. C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 697 (5th Cir. 2001)(citing Owen v. Kerr McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)).

The expert's testimony must be both relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007); see also Fed. R. Evid. 702 & advisory committee's note, 2000 Amends. The burden of establishing this predicate for the expert's testimony falls on the party producing the expert. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The trial court has the responsibility of determining whether that party has met its burden. Fed. R. Evid. 104(a); Mathis v. Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). The court also determines, as a matter of law, whether the expert is qualified to testify on the subjects on which he offers opinions. Mathis, 302 F.3d at 459. The trial judge has "wide latitude in determining the admissibility of expert testimony;" yet, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; Wilson v. Woods, 163 F.3d 935, 936-37 (5th Cir. 1999)(quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997)).

To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see also United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004); Daubert, 509 U.S. at 591. The Federal Rules of Evidence define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. In other words, the expert testimony must be applicable to the facts in issue. Daubert, 509 U.S. at 592-93.

Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. See Fed. R. Evid. 702. The trial judge must make certain that the expert applied "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd., 526 U.S. at 152.

**IV. Discussion**

Defendant challenges Dr. Arden's qualifications and the reliability of his opinions regarding the bullet trajectory, pain and suffering, blood spatter, and running movements. Plaintiff disagrees on all points and contends that Dr. Arden is qualified to opine on all of these issues.

**A.    Qualifications**

Defendant asserts that Dr. Arden is "not qualified to provide opinion testimony that will help the jury understand the physical evidence or determine any material fact in issue in this case."[32] According to Defendant, Dr. Arden's lack of ballistics and scene-reconstruction expertise renders him unqualified to offer expert testimony that will assist the jury.

In response, Plaintiff argues that Dr. Arden is qualified to "draw conclusions about the direction of the bullet's travel relative to [Decedent's] body at the time of the shooting" based on his lengthy training in medicine and forensic pathology.[33] Plaintiff concedes that Dr. Arden is not an expert in scene reconstruction, however, his testimony is not offering a scene reconstruction.[34]

The court notes that Dr. Arden is very well qualified by experience and education to discuss the anatomical positioning of the wound.  He is also qualified to express his opinion on whether the wound is consistent with Officer Castro's account of the incident.    The   majority   of   Dr.   Arden's   opinion   uses   the characteristics of the bullet wound to determine the distance between Decedent and Officer Castro.  This determination is well

---

[32]    Doc. 108, Defs.' Mot. to Exclude Expert Test. of Dr. Arden p. 2.

[33]    Doc. 145, Pls.' Resp. to Defs.' Mot. to Exclude Expert Test. of Dr. Arden p. 6.

[34]    Id. p. 11.

10

within Dr. Arden's scope of expertise.

Dr. Arden's lack of ballistic and scene-reconstruction expertise may limit the weight of his report, but it does not provide a reason for striking the report. See Fed. R. Civ. P. 26(a)(2)(B) ("The report must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them . . . ."); Hacienda Records, L.P. v. Ramos, No. CV 2:14-19, 2016 WL 3543241, at *3 (S.D. Tex. June 29, 2016)(unpublished)("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned to that opinion rather than its admissibility and should be left for the jury's consideration.")(quoting United States v. 14.38 Acres of Land, More or Less Sit. in Leflore Cnty., Miss., 80 F.3d 1074, 1077 (5th Cir. 1996).

Therefore, Dr. Arden's expert testimony regarding the bullet wound is properly grounded in his qualifications.

**B.    Reliability**

Defendant challenges Dr. Arden's ability to provide reliable testimony by arguing that his opinions are based on speculation rather than dependable methods or principles. However, Dr. Arden established a connection between his years of experience as a medical examiner to his conclusions and demonstrated that his experience and knowledge can be applied to the facts of this case. Thus, it is not necessary for Dr. Arden to rely on a scientific

11

theory or technique to make his testimony reliable.

Defendant asserts that Dr. Arden "offers speculative testimony on [Decedent's] pain and suffering that is not helpful to the jury. . . . [w]ithout reciting any factual, medical or well-researched basis for his opinions."[35] Plaintiff disagrees by arguing that the testimony is needed for the jury to calculate damages pursuant to Plaintiff's survival claim and is based on evidence gathered by Defendant's own scene examiner. Moreover, Plaintiff cites Dr. Arden's expertise as a medical doctor, which "allow[s] him to give non-speculative opinions on matters of consciousness and pain."[36]

Dr. Arden discussed the facts that he considered and cited the autopsy report he used to conclude the magnitude of the pain and suffering. He agreed with the medical examiner that the primary cause of death was blood loss from the gunshot wound and acknowledged that his conclusions reflect his understanding of medicine and the evidence.

Lastly, Defendant challenges Dr. Arden's trail of blood and running movement testimony as unfounded and unhelpful to the jury in any material matter. Plaintiff disagrees by pointing out that both Defendant's and Plaintiff's reconstruction experts agree that "the most probable location of [Decedent] when he was shot was near

---

[35] Doc. 108, Defs.' Mot. to Exclude Expert Test. of Dr. Arden p. 7.

[36] Doc. 145, Pls.' Resp. to Defs.' Mot. to Exclude Expert Test. of Dr. Arden p. 16.

where the blood trail began."[37] Dr. Arden's opinions are consistent with both reconstruction experts' conclusions in that the location of the blood trails reflect the location and the movement of the deceased before he died. Moreover, Dr. Arden acknowledges that the account of the incident in his report is based on the factual evidence he reviewed.

Because Dr. Arden's opinion is grounded in facts and evidence, the court rejects Defendant's argument that Dr. Arden's opinions are not the product of reliable principles and methods.

## V. Conclusion

Based on the foregoing, the court **DENIES** the motion.

**SIGNED** in Houston, Texas, this 31st day of August, 2018.

_____
U.S. MAGISTRATE JUDGE

---

[37] Id. p. 17.